**MARSHALL v. UNITED STATES.**

No. 9864.

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 28, 1949.

Decided June 20, 1949.

Mr. Osmond K. Fraenkel, New York
City, with whom Mr. Abraham J. Isserman,

Los Angeles, Cal., was on the brief, for appellant.

Mr. Charles B. Murray, Assistant United States Attorney, Washington, D. C., with whom Mr. George Morris Fay, United States Attorney, Washington, D. C., was on the brief, for appellee.

Mr. Sidney S. Sachs, Washington, D. C., also entered an appearance for appellee.

Before CLARK, WILBUR K. MILLER, JJ., and GEORGE C. SWEENEY, District Judge, sitting by designation.

SWEENEY, District Judge.

This is an appeal from a judgment of the United States District Court for the District of Columbia convicting the appellant, George Marshall, of violating § 192 of Title 2, United States Code, Annotated, and the question involved is similar to that in Lawson v. United States of America (Trumbo v. United States), —— U.S. App.D.C. ——, 176 F.2d 49; and Morford v. United States of America, —— U.S. App.D.C. ——, 176 F.2d 54.

In January, 1946, a subpoena was issued by the House of Representatives of the Congress of the United States summoning appellant, then the Chairman of an organization known as the "National Federation for Constitutional Liberties", to appear before the Un-American Activities Committee of the House of Representatives and to "bring with you all books, records, documents and correspondence pertaining to the National Federation for Constitutional Liberties relating to the solicitation and disbursement of funds with a list of all contributors * * *" Appellant appeared before the Committee, first in New York City and later in Washington, D. C., but in both instances refused to produce the documents demanded by the subpoena, although he was the proper officer of the Federation to have produced them.

Appellant attacks the constitutionality of the Resolution creating the Committee, claiming that it is unconstitutional both on its face and in its application to the facts of this case. The question whether the Resolution is unconstitutional on its face is disposed of in Barsky v. United States, 83 U.S. App.D.C. 127, 167 F.2d 241. The claim that the Resolution is unconstitutional in its application to the facts of this case because it abridges freedoms of speech and press guaranteed by the First Amendment to the Constitution is without merit. The rights guaranteed by the First Amendment are not absolute, and are subordinate to the greater rights of the general public interest, and to the right of the government to maintain and protect itself. Barsky v. United States, supra.

It must be remembered that the matters open to inspection by the Committee are not limited to an appraisal of the pamphlets, books, magazine articles, briefs, lectures, and other propaganda activities intended by an organization for general public attention and consumption. The Resolution itself authorizes investigations not only of un-American propaganda activities, but also "the extent, character, and objects" of such activities, which by implication we think should also apply to the provision for investigating the "diffusion" of subversive and un-American propaganda. And the third clause of the Resolution authorizes investigation of "all other questions in relation" to "the extent, character, and objects" and "diffusion" of subversive and un-American propaganda, which clearly includes an inquiry as to finances and personnel of the Federation.

It is clear, as appellant argues, that in a criminal prosecution for a refusal to obey a subpoena the question asked or the material called for must be pertinent to the inquiry. Indeed, under the statute involved, the grounds for committing a misdemeanor exist only when one who has appeared before the Committee "refuses to answer any question pertinent to the question under inquiry * * *." The question therefore is simply whether in an investigation of the Federation it is pertinent for the Committee to inquire as to the finances and personnel of the organization. Counsel for appellant argue that appellant must be allowed to determine the question of pertinency on the basis of what he knew the facts concerning the Federa-

tion to be, and that he must have an opportunity of persuading the court that, in fact, the propaganda activities of the Federation were not such as brought them within the scope of the Committee's functions, claiming that the trial court refused to allow him to introduce evidence on that point. This line of argument confuses the simple question of the relevancy of the information demanded with the broader question whether the Federation was in fact subject at all to the investigatory powers of the Committee.

It is well known that the modern pattern of subversive propaganda, as exemplified by that of the Communist Party, may be composed of two aspects. There is first a public aspect, which by itself may appear quite innocent, and indeed may seem commendable in the objects and causes which it appears to espouse. But this public feature of the subversive propaganda technique is often only a means of hiding, strengthening, and enlarging the sphere of operations of a subversive organization. The real purpose and goal, which seeks to destroy our constitutional guarantees, may never be openly and publicly announced, but spread in a secret, clandestine fashion, beyond the reach of the eyes and ears of the general public. This silent diffusion of subversive doctrines is propaganda fully as much as the pamphlets and other public demonstrations conducted by the organizations. And, in fact, because of its secret nature, this aspect of subversive activities requires the full investigatory attention of a governmental body like the Committee even more than does its public counterpart. To deny the Committee the authority to investigate this, the more dangerous side of such activity, would be to encourage more zealous efforts along those lines by subversive elements.

We agree with the lower court that the Committee had reasonable cause to investigate the Federation, this cause being in the nature of information given to it by Congressman Martin Dies on the floor of the House when he was Chairman of the predecessor to the present Un-American Activities Committee. Any reference to this and other speeches of Congressman Dies would readily convince any reasonable person that this Committee acted properly in conducting the investigation.

The failure of the appellant to produce the records called for, was defiant and contumacious. We think that there is no merit in the other contentions of the appellant and, relying much upon the reasoning contained in the Barsky, Lawson, Trumbo and Morford cases, we feel that the ruling of the lower court should be sustained, and the judgment appealed from in this case is

Affirmed.